FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 09, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARGARET B.,[1]<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>Defendant. | No. 1:20-CV-03174-ACE<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS<br><br>**ECF Nos. 20, 23** |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 20, 23. Attorney D. James Tree represents Margaret B. (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 8. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

///

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

# JURISDICTION

Plaintiff protectively filed an application for Disability Insurance Benefits and an application for Supplemental Security Income on December 30, 2014, alleging disability since June 1, 2014 due to anxiety, bipolar disorder, post-traumatic stress disorder (PTSD), and depression. Tr. 15, 88, 108, 252-66. The applications were denied initially and upon reconsideration. Tr. 138-46. Administrative Law Judge (ALJ) Chris Stuber held a hearing on April 9, 2020.[2] Tr. 15, 62-85. ALJ Stuber issued an unfavorable decision on April 23, 2020. Tr. 12-32. Plaintiff requested review by the Appeals Council and the Appeals Council denied the request for review on August 24, 2020. Tr. 1-6. The ALJ's April 2020 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 22, 2020. ECF No. 1.

---

[2] Plaintiff failed to appear for a hearing before an ALJ on November 23, 2016, and on April 4, 2017 an ALJ found there was no good cause for Plaintiff's failure to appear and dismissed her request for hearing. Tr. 129-34. Plaintiff requested review of the decision by the Appeal's Council, and on January 31, 2018 the Appeals Council granted Plaintiff's request for review, vacated the ALJ's order of dismissal, and remanded the case for further proceedings. Tr. 135-37. The Appeals Council ordered the ALJ to consider additional information to decide if Plaintiff had a good reason for not appearing at the hearing; and if so, she was to be given another opportunity for a hearing. Tr. 136-137. The Appeals Council noted Plaintiff was homeless at the time of hearing, the post office had returned the Notice to Show Cause letters to sender, and that Plaintiff alleged mental health issues and had called to alert the hearing office she would not attend. Tr. 136. In 2020, ALJ Stuber found Plaintiff had good cause to miss the 2016 hearing and held a new hearing. Tr. 15.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Hum. Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant

establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On April 23, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 12-32.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2014, the alleged onset date. Tr. 17.

At step two, the ALJ determined Plaintiff had the following medically determinable impairments: polysubstance abuse, asthma, posttraumatic stress disorder (PTSD), obesity, major depressive disorder, degenerative disc disease, and a personality disorder. Tr. 18. The ALJ then found that Plaintiff did not have an impairment or combination of impairments that significantly limited (or were expected to significantly limit) her ability to perform basic work-related activities, and that Plaintiff's impairments were therefore nonsevere. Tr. 18, 24.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from her alleged onset date, June 1, 2014 through the date of the decision. Tr. 25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

standards. Plaintiff raises the following issues for review: whether the ALJ conducted a proper step-two analysis. ECF No. 20 at 2.

## DISCUSSION

**A. Step Two**

Plaintiff contends the ALJ erred at step two by finding no severe impairments, improperly evaluating the medical opinion evidence and Plaintiff's subjective complaints, failing to consider Plaintiff's bipolar disorder, and denying Plaintiff's claim at step two of the sequential analysis. ECF No. 20 at 7-19.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any medically determinable severe impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522, 416.922; SSR 85-28.[3]

The step-two analysis is "a de minimis screening device [used] to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting

---

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). The ALJ many only find a claimant lack a medically severe impairment or combination of impairments if the ALJ's conclusion is "clearly established by medical evidence." *Webb*, at 687 (quoting SSR 85-28).

When a claimant alleges a severe mental impairment, the ALJ must also follow a two-step "special technique." 20 C.F.R. §§ 404.1520a, 416.920a. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, the ALJ must assess and rate the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2)-(c)(4), 416.920a(b)(2)-(c)(4). Functional limitation is measured as "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If limitation is found to be "none" or "mild," the impairment is generally considered to not be severe. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the impairment is severe, the ALJ proceeds to step three to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2)-(3), 416.920a(d)(2)-(3).

Here, the ALJ found Plaintiff had medically determinable mental health impairments, but denied Plaintiff's claim for disability at step two, concluding that her medically determinable impairments did not significantly limit her ability to perform basic work related activities for 12 consecutive months; and caused Plaintiff no limits in understanding, remembering or applying information, interacting with others, adapting or managing herself, and only mild limits in concentrating, persisting and maintaining pace. Tr. 18, 24. The ALJ found,

therefore, her history of polysubstance abuse, PTSD, major depressive disorder, and personality disorder were not severe impairments.

Plaintiff contends the ALJ harmfully erred in denying Plaintiff's claim at step two, because despite diagnosis and treatment for numerous mental health impairments, along with examining psychologists' opinions that she had disabling limitations from mental health impairments throughout the period at issue, the ALJ found Plaintiff lacked any medically severe impairments since her alleged onset date in 2014 through the hearing in 2020. ECF No. 20 at 7-19. Defendant contends the ALJ reasonably found that Plaintiff's medically determinable impairments nonsevere based on objective medical evidence and Plaintiff's demonstrated abilities at the time of the hearing. ECF No. 20 at 4-11.

The Court finds the ALJ erred by denying her claim at step two. First, the ALJ's analysis of the four broad areas of functioning focused on her functioning as of her 2019 return to full time work. Tr. 24. This is insufficient. Plaintiff's alleged onset date is in 2014, and records show a long history of mental health treatment, including diagnosis and treatment for bipolar disorder, persistent suicidal ideation with inpatient psychiatric hospitalization and treatment in 2018, and a long history of substance abuse with periods of treatment, sobriety, and relapse throughout the period at issue. *See, e.g.*, 423, 451-52, 645, 648-649, 774-75, 792, 802, 886, 896, 944. 958, 1074-76, 1093-94, 1095-99. Records throughout the period at issue show persistent abnormal findings upon mental status exam, including depressed, anxious, or labile mood, and impaired judgement and insight, and providers have noted "personality issues," anger, irritability, and difficulty interacting with others, along with paranoia and auditory hallucinations; she has also had repeat periods of homelessness coinciding with increased mental health symptoms and/or periods of relapse into substance use. *See, e.g.*, Tr. 410-11, 451-52, 774-45, 802, 875, 884-85, 892, 921-22, 924, 927, 934, 944-45, 949, 951-52,

961, 978, 1087, 1089-90, 1178, 1182.  The ALJ's finding that Plaintiff's medically determinable impairments did not significantly limit Plaintiff's mental ability to do basic work activities for 12 consecutive months, and that Plaintiff therefore did not have a medically severe impairment or combination of impairments during the entire period at issue is not supported by substantial evidence.

      1.  *Medical Opinions*

Plaintiff contends the ALJ erred when weighing the medical opinions at step two.[4]  ECF No. 20 at 15-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).  If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and

---

[4] For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. For claims filed before March 27, 2017, such as this one, the rules in 20 C.F.R. §§ 404.1527, 416.927 apply.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, in discussing the medical opinion evidence, the ALJ noted "the record contains multiple psychological evaluations and reviews performed for establishing and/or maintaining State benefits through . . . DSHS." Tr. 23 (citing Tr. 386-93, 450-54, 1255-84, 1520-21). The ALJ did not discuss the findings or opinions of the individual psychologists. *Id.* Instead, the ALJ gave the opinions as a group "no weight," finding the opinions were "inconsistent with the minimal observations of psychiatric symptoms" and Plaintiff's activities, including work activity. Tr. 23. Because the opinions of the examining psychologists were contradicted by the 2015 opinions of state agency reviewing doctors, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject them.

*Dr. Yun and Examining Psychologists*

In 2016 and 2018, Jenna Yun, Ph.D. completed psychological/psychiatric evaluations of Plaintiff on behalf of Washington State DSHS and provided opinions on Plaintiff's level of functioning. Tr. 1255-68, 1269-84. In 2016, Dr. Yun diagnosed Plaintiff with borderline personality disorder; PTSD; major depressive disorder, moderate and recurrent; amphetamine use disorder, in reported early remission; and cocaine use disorder, in reported sustained remission. Tr. 1271. She opined Plaintiff had severe limits in her ability to in her ability to understand, remember, and persist in tasks by following very short and simple instructions and detailed instructions, to learn new tasks, communicate and perform effectively in a work setting, maintain appropriate behavior in a work

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

setting, complete a normal workday and work week without interruptions from psychologically based symptoms, and to set realistic goals and plan independently; she had marked limits in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, and make simple work-related decisions; and moderate limits in her ability to perform routine tasks without special supervision, be aware of normal hazards and take appropriate precautions, and to ask simple questions or request assistance. Tr. 1272. Dr. Yun opined the overall severity of Plaintiff's impairments was severe and not primarily the result of alcohol or substance use substance within the past 60 days, and that the impairments would persist following 60 days of sobriety. Tr. 1272. She opined Plaintiff would be so limited for 12 months with available treatment. *Id.*

In 2018, Dr. Yun evaluated Plaintiff again. Tr. 1255-68. Dr. Yun diagnosed Plaintiff with borderline personality disorder; PTSD; major depressive disorder, severe with psychotic features, recurrent; amphetamine use disorder, in reported sustained remission; and cocaine use disorder, in reported sustained remission. Tr. 1257. She opined Plaintiff had marked limitation in her ability to understand, remember, and persist in tasks by following detailed instructions, adapt to changes in a routine work setting, maintain appropriate behavior in a work setting, and complete a normal workday and work week without interruptions from psychologically based symptoms; and moderate limits in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, learn new tasks, perform routine tasks without special supervision, make simple work related decisions, communicate and perform effectively in a work setting, set realistic goals and plan independently. Tr. 1257-58. Dr. Yun opined the overall severity of Plaintiff's impairments was marked and not primarily the result of a substance use disorder,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

and that the effects would persist following 60 days of sobriety. Tr. 1258. She opined Plaintiff would be so limited for 12 months with available treatment. *Id.*

The ALJ did not address Dr. Yun's two opinions, rejecting them generally with the opinions of all psychologists who evaluated Plaintiff on behalf of Washington State DSHS between 2014 and 2018. Tr. 23. Providing a blanket rejection of the opinions is contrary to the regulations which require that each medical source opinion be evaluated. 20 C.F.R. §§ 404.1527(b)-(c), 416.927(b)-(c). The ALJ also discounted the opinions of the examining psychologists because the evaluations were performed for the purpose of establishing or maintaining state benefits. Tr. 23. However, the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester*, 81 F.3d at 832 (citation omitted). The ALJ erred by failing to evaluate each medical source opinion and discounting the opinions as a whole because they were provided for state benefits.

Next, the ALJ gave the evaluations no weight because the opinions were inconsistent with minimal observations of psychiatric symptoms at a variety of medical appointments in the record. Tr. 23. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, an ALJ must also consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Here, the string of cites the ALJ uses to support his conclusion that Dr. Yun and other examining provider's opinion are inconsistent with "minimal observations of psychiatric symptoms" includes numerous office visits for unrelated physical issues including gynecological issues, contraception, snoring, a rash, multiple visits for sinusitis, a sore ankle, and more than one visit

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

for a foot infection. *See* Tr. 523, 529, 534, 590, 594, 602, 818, 829, 832, 997. Additionally, while citing some generally normal mental status findings from physical exams, the ALJ fails to note abnormal findings or other relevant evidence at the same appointment; the ALJ, for example, cites to normal mental status findings in October 2014, but fails to discuss issues with anger and irritability, recent prescription for Depakote, suicidal ideation and note by the provider that her mental health treatment is provided by a different mental health specialist. Tr. 399. While the ALJ cites to a page from a therapy appointment in 2014 showing she "presented as happy/excited" because she had just been released from jail, her therapist also noted at that time that her mental health symptoms persisted and that her treatment plan included reduction of symptoms of depression and panic disorder. Tr. 404-05. The ALJ cited to normal portions of another mental status exam in October 2014, Tr. 405, but abnormal findings at the same visit included impaired judgement and insight, and Plaintiff reported she was recently homeless with increasing symptoms including anger and irritability. Tr 407, 410. Many of the records the ALJ cites to also reference Plaintiff's bipolar disorder, specifically noting she is treated by a mental health specialist/clinic for mental health, but the ALJ does not discuss this impairment in the decision. *See, e.g.*, Tr. 590, 601, 818 (noting treatment for bipolar disorder managed by different provider and treated with medication).

The ALJ fails to discuss relevant evidence including provider observations of abnormal findings on mental status exam throughout the period at issue, including frequent abnormal mood findings and persistent impairment in judgement and insight. *See e.g.*, Tr. 410, 875, 884-885, 951-52, 961, 1089-90, 1095, 1160, 1182, 1260, 1274, 1296, 1308, 1315, 1326. Upon mental exam in 2016, Dr. Yun also observed anxious depressed mood with tearful and depressed affect, and while Plaintiff's thought process appeared normal and she was oriented,

Dr. Yun observed her memory, fund of knowledge, and concentration were impaired, as was her judgement and insight. Tr. 1273-74. In 2018, Dr. Yun again noted Plaintiff demonstrated impaired judgement and lack of insight into her conditions. The ALJ is not permitted to "cherry pick" from mixed evidence to support a denial of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014). The ALJ's conclusion the evaluating psychologists' opinions, including Dr. Yun's 2016 and 2018 opinions, were inconsistent with minimal observations of psychiatric symptoms in the record is not supported by substantial evidence.

The ALJ also determined the evaluating psychologists' opinions were inconsistent with Plaintiff's activities, including her ability to work in lieu of incarceration and her recent work activity as describe at the hearing. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, however, there is no evidence Plaintiff worked more than sporadically or part time at any time during the period at issue until 2019, and the ALJ noted minimal earnings in 2014, 2015, and 2018 that did not rise to the level of SGA. Tr. 17-18. While she testified she was working full time at the 2020 hearing, this was many years after her alleged onset date in 2014, and she reported full time work only began in 2019. The ALJ's conclusion that Plaintiff's work activity was inconsistent with the examining psychologists' opinions is not supported by substantial evidence.

Given the ALJ's failure to consider relevant evidence in the record and adequately address the opinions of the examining psychologists, the ALJ's step two analysis is not supported by substantial evidence. The errors in evaluating the medical evidence including opinion evidence were not harmless because had the evaluations of Dr. Yun or the other examining psychologists been credited, the

ALJ would have found Plaintiff's mental health impairments severe, necessitating completion of the sequential analysis beyond step two.

Upon remand, the ALJ shall reevaluate the medical evidence, including all medical evidence, with the assistance of psychological medical expert testimony to determine Plaintiff's impairments and level of functioning.

*2. Symptom Testimony*

Plaintiff contends the ALJ erred by improperly assessing Plaintiff's subjective complaints. ECF No. 20 at 11. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent. Tr. 19.

Having determined a remand is necessary to reassess the medical evidence and perform the step two analysis anew, any reevaluation entails a reassessment of Plaintiff's subjective symptom claims. Thus, the Court need not reach this issue and on remand the ALJ must also carefully reevaluate Plaintiff's symptom claims

in the context of the entire record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and not free of harmful error. Upon remand the ALJ shall reassess Plaintiff's medically determinable impairments and level of functioning during the entire period at issue. The ALJ shall reevaluate the medical evidence of record with the assistance of psychological medical expert testimony, including the medical opinion evidence and plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED January 9, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15